J-S56043-16

2016 PA Super 196

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOSUE FAURELUS, | |
| Appellant | No. 1236 MDA 2015 |

Appeal from the Order Entered June 9, 2015
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0004602-2008

BEFORE: BENDER, P.J.E., PANELLA, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.: **FILED AUGUST 31, 2016**

Appellant Josue Faurelus appeals from the order of the Honorable David W. Lupas of the Court of Common Pleas of Luzerne County denying Appellant's petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546. Petitioner raises several claims of ineffectiveness of counsel. After careful review, we affirm.

Appellant was charged with criminal homicide (18 Pa.C.S. § 2501) and possession of a firearm prohibited (18 Pa.C.S. § 6105(a)(1)) in connection with October 20, 2008 shooting death of Christly Aristide ("the victim"). On that day, Jose Cruz agreed to drive Tabitha Bidgood and her friend, Appellant, to a home on High Street in Wilkes-Barre, Pennsylvania. Bidgood and Cruz stayed in the car while Appellant entered the home. Shortly thereafter, the victim exited the house and ran up the street. Appellant then left the home and jumped into Cruz's car. Cruz noticed Appellant's lip was

*Former Justice specially assigned to the Superior Court.

bleeding. Appellant indicated that his friend had punched him and swore he was "going to get this nigger." Notes of Testimony (N.T.) Trial, 10/14/09 - 10/20/09, at 101, 409.

Once Cruz began driving, Appellant spotted the victim two blocks away. Appellant yelled for Cruz to stop the vehicle, got out, and ran behind the vehicle towards the victim. Bidgood heard Appellant say to the victim, "What now, pussy?" N.T. Trial at 411. Both Bidgood and Cruz heard gunshots. Cruz looked back and saw "a young guy on the floor" and claimed that he observed "someone getting beaten with something." N.T. Trial at 103. Appellant jumped back in the vehicle and told Cruz and Bidgood, "you guys didn't see nothing." N.T. Trial at 104. Appellant wiped the gun off, handed it to Bidgood, ordered her to get out of the car, and demanded that Cruz continue to drive.

Complying with Appellant's orders, Cruz observed an unmarked police car while stopped at a traffic light. Cruz waited at the light after it turned green, hoping the officer would initiate a traffic stop. Police subsequently detained Cruz's vehicle and arrested Appellant. Despite Appellant's attempts to remove gunpowder residue from his person, the police discovered gunpowder residue on Appellant's hands and clothing.

Police responded to the scene and found the victim with a head wound and two gunshot wounds, one of which was to the victim's back. Officers spoke to eyewitnesses who observed the victim being beaten while he lay on the ground dying. The victim was found in possession of $1,373 in cash.

Through a tip from an informant, the officers also recovered the firearm used in the shooting from one of Appellant's associates.

Charged with the aforementioned offenses, Appellant filed several pretrial motions, including a motion to suppress a letter delivered to the prosecutor's office on November 21, 2008. On that date, an unidentified man gave a sealed letter addressed to the Luzerne County District Attorney to the office's receptionist, who in turn handed it to Assistant District Attorney Jeffrey Tokash. ADA Tokash opened the sealed envelope and discovered a second, previously opened envelope addressed to Appellant's girlfriend, Nicole Wenrich, from Appellant, who listed the county jail as the return address. This envelope contained a letter in which Appellant directed Wenrich to convince certain witnesses to provide false testimony.

After a hearing, the suppression court denied Appellant's motion, rejecting his argument that the Commonwealth violated a constitutionally protected privacy interest in the letter by reading the letter without first obtaining a warrant. Since the envelope Appellant sent to his girlfriend was already opened when delivered to the prosecutor's office, the suppression court reasoned that any alleged search of the letter was performed by a private party who was not acting as an agent of the Commonwealth or with the knowledge of a Commonwealth official. *See Commonwealth v. Harris*, 572 Pa. 489, 513, 817 A.2d 1033, 1047 (2002) (stating "[t]he proscriptions of the Fourth Amendment and Article I, § 8, do not apply to searches and seizures conducted by private individuals") (citations omitted).

Even assuming Appellant had a constitutional right to privacy in the letter,[1] the suppression court found the Commonwealth's viewing of the letter did not exceed the scope of the private search. **See id**. at 515, 817 A.2d at 1048 (indicating that "additional invasions of privacy by [] government agent[s] following a private search must be tested by the degree to which they exceeded the scope of the private search") (citation omitted).

On October 14-20, 2009, the trial court conducted a jury trial on the homicide charge.[2] As Appellant conceded he shot the victim, most of the Commonwealth's evidence was uncontested. Appellant's intent and state of mind at the time of the shooting were the disputed issues at trial. In support of its theory that Appellant intended to kill the victim, the Commonwealth called several eyewitnesses who testified that Appellant beat the victim while he lay dying. In addition, the Commonwealth's expert witness indicated Appellant shot the victim in the back. The Commonwealth also presented evidence that Appellant attempted to cover up the crime by discarding the murder weapon, trying to remove gunpowder residue from his body, and intimidating witnesses to influence their testimony.

_____

[1] This Court pointed out on direct appeal that an inmate generally has no constitutional right to privacy in his non-privileged prison mail. **Commonwealth v. Faurelus**, No. 459 MDA 2010, unpublished memorandum at 7 (Pa.Super. filed September 28, 2011) (citing **Commonwealth v. Moore**, 928 A.2d 1092, 1102 (Pa.Super. 2007)).

[2] Upon motion of the Commonwealth, the trial court severed the charge for illegally possessing a firearm from the homicide charge.

Appellant testified in his own behalf, admitting to shooting the victim, but claiming he did so in self-defense. In giving his account of the events of October 20, 2008, Appellant alleged that after encountering the victim in the home on High Street, the victim punched Appellant, stole Appellant's money, and ran from the home. Further, Appellant claimed that, when the men met again in the street, the victim pulled a gun on Appellant. Appellant explained that when he reached to grab the gun from the victim, it went off, causing him to panic and run away without retrieving his money. The defense also presented the testimony of Appellant's sister, Nahomie Faurelus, who claimed that she had given Appellant $1,500 in cash before the shooting to pay Appellant's rent and medical bills and partly as a gift for Appellant's son's birthday.

At the conclusion of the trial, the jury convicted Appellant of third-degree murder.[3] On February 23, 2010, the trial court sentenced Appellant to twenty to forty years incarceration. Appellant filed a timely appeal. On September 28, 2011, this Court affirmed Appellant's judgment of sentence. On April 12, 2012, our Supreme Court denied Appellant's Petition for Allowance of Appeal.

---

[3] Appellant pled guilty to the charge of possessing a firearm prohibited and was sentenced on a separate docket.

On December 10, 2012, Appellant filed a timely *pro se* PCRA petition.[4] The PCRA court appointed counsel to represent Appellant, held a hearing on his petition on May 27, 2015, and entered an order on June 9, 2013 denying the petition. This timely appeal followed. Appellant complied with the PCRA court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues for our review on appeal:

A. Whether Appellate Counsel was ineffective in failing to properly raise the issue of whether the evidence was sufficient to establish malice in that the Commonwealth, rather than [Appellant] had the burden to prove [Appellant] did not act in the heat of passion?

B. Whether first Appellate Counsel was ineffective in failing to properly raise the issue of insufficiency of the Commonwealth's evidence in disproving his claim of self-defense in the 1925(b) Statement and whether Second Appellate Counsel was ineffective in failing to ask the Superior Court to remand the case back to supplement the 1925(b) statement?

C. Whether Trial Counsel was ineffective for failing to object to hearsay testimony of Assistant District Attorney Jeffrey Tokash during the Suppression Hearing?

D. Whether Trial Counsel was ineffective for failing to object and/or request a complete and adequate reinstruction of malice when the jury requested the definition of malice to be re-read to them during deliberation?

---

[4] *See* 42 Pa.C.S. § 9545(b)(1) ("Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final....").

E. Whether Trial Counsel was ineffective for failing to object to improper jury instructions given by the Court regarding the crime of voluntary manslaughter?

F. Whether Trial Counsel was ineffective in failing to object to prejudicial and improper statements made by the Commonwealth during the Commonwealth's closing argument?

Appellant's Brief, at 4 (reordered for review).

Our standard of review for the denial of a PCRA petition is as follows:

The standard of review for an order denying post-conviction relief is limited to whether the record supports the PCRA court's determination, and whether that decision is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

*Commonwealth v. Walters*, 135 A.3d 589, 591 (Pa.Super. 2016). In order to be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in Section 9543(a)(2), which includes the ineffective assistance of counsel. 42 Pa.C.S. § 9543(a)(2)(i).

"It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." *Commonwealth v. Koehler*, 614 Pa. 159, 36 A.3d 121, 132 (2012) (citing *Strickland v. Washington*, 466 U.S. 688, 687-91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). To prevail on an ineffectiveness claim, the petitioner has the burden to prove that "(1) the underlying substantive claim has

arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." *Commonwealth v. Sneed*, 616 Pa. 1, 18, 45 A.3d 1096, 1106 (2012) (quoting *Commonwealth v. Pierce*, 567 Pa. 186, 203, 786 A.2d 203, 213 (2001)). "A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Commonwealth v. Johnson*, 600 Pa. 329, 345–46, 966 A.2d 523, 532–33 (2009) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674). The failure to satisfy any one of the three prongs will cause the entire claim to fail. *Sneed*, 616 Pa. at 18, 45 A.3d at 1106 (citation omitted).

First, Appellant contends appellate counsel was ineffective in failing to properly raise a challenge to the sufficiency of the evidence supporting his third-degree murder conviction. Appellant claims counsel should have argued that the burden of proof was improperly shifted to Appellant to prove he did not act with malice, but instead acted in the heat of passion to warrant a conviction on the lesser offense of voluntary manslaughter.

Although the issue statement is styled as a sufficiency claim, Appellant seems to argue in his brief that trial counsel should have asked the trial court to instruct the jury that the Commonwealth had the burden of disproving that Appellant acted in the heat of passion. However, the trial court did instruct the jury that the Commonwealth had the burden of proof

- 8 -

and indicated that if they believed Appellant acted in the heat of passion, this finding would eliminate the element of malice.  Specifically, the trial court stated that the jury "could find malice and murder only if you are satisfied beyond a reasonable doubt that [Appellant] was not acting under a sudden and intense passion resulting from serious provocation by [the victim]."  N.T. Trial at 797.[5]

In addition, Appellant suggests trial counsel should have not allowed the trial court to instruct the jury that both specific intent and malice may be proven by the use of a deadly weapon to a vital part of the victim's body.  However, our Supreme Court has emphasized that "the finder of fact may infer malice and specific intent to kill based on the defendant's use of a deadly weapon on a vital part of the victim's body."  ***Commonwealth v. Hitcho***, ___Pa.___, 123 A.3d 731, 746 (2015) (citing ***Commonwealth v. Arrington***, 624 Pa. 506, 86 A.3d 831, 840 (2014), *cert. denied,* ___U.S. ___, 135 S.Ct. 479, 190 L.Ed.2d 363 (2014)).  The trial court did not shift the burden of proof to Appellant, but found it reasonable for the jury to infer Appellant's malice as he admittedly shot the victim in the abdomen and back, where the bullets punctured several of the victim's vital organs.  N.T. Trial at 489-91.

---

[5] Appellant does not claim that defense counsel were ineffective in deciding not to pursue an argument that he acted in the heat of passion.

While Appellant argues that trial counsel should have asked the trial court for a specifically worded jury instruction, he does not show actual prejudice as he failed to show there is a reasonable probability that the outcome of his trial would have been more favorable to him had counsel objected to the trial court's instruction. *See Commonwealth v. Spotz*, 624 Pa. 4, 47-48, 84 A.3d 294, 320 (2014) ("to establish prejudice from trial counsel's failure to object to the challenged portion of the [jury] charge, [the petitioner] must show there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different"). We thus conclude that the PCRA court correctly dismissed this claim of ineffectiveness.

Second, Appellant claims that his first appellate counsel, Atty. Matthew Kelly, was ineffective in failing to properly raise in his 1925(b) statement the issue of insufficiency of the evidence in disproving his claim of self-defense. Appellant also contends that his second appellate counsel, Demetrius Fannick, was ineffective in failing to ask the Superior Court to remand the case back to supplement the 1925(b) statement to add this issue.

At the PCRA hearing, Atty. Kelly and Atty. Fannick testified that they discussed the prospects of this appeal before filing Appellant's 1925(b) statement and chose not to include a sufficiency challenge because they believed it was not a strong argument. Atty. Fannick admitted that he had included a sufficiency claim regarding the malice element (an issue that had

not been preserved in the 1925(b) statement) in his appellate brief only to satisfy Appellant who was adamant that it be raised on appeal.

We agree that defense counsel had a strategic basis for not raising a weak sufficiency claim to focus on other issues that they believed had arguable merit. The Commonwealth presented ample evidence to show that Appellant did not act in self-defense. After encountering the victim at the home on High Street, Appellant told Cruz and Bidgood that he would "get" the victim. N.T. Trial at 101, 409. When he encountered the victim a few blocks away, he initiated contact and taunted the victim, yelling, "What now, pussy?" N.T. Trial at 411. Appellant shot the victim and was observed beating the victim as he lay on the ground dying. Moreover, Appellant tried to cover up his involvement in the shooting by getting rid of the murder weapon, ordering witnesses not to testify, and trying to eliminate gunpowder residue from his clothing and body. As a result, we conclude that defense counsel had a reasonable basis for choosing not to raise this issue on appeal and thus were not ineffective.

Third, Appellant claims trial counsel was ineffective for failing to object to hearsay testimony of Assistant District Attorney Jeffrey Tokash during the Suppression Hearing. Appellant takes issue with the fact that the trial court allowed ADA Tokash to testify that the receptionist of the prosecutor's office told him that an unidentified male dropped off the letter addressed to the district attorney's office. Appellant claims that he suffered significant prejudice when the Commonwealth was allowed to admit this letter, which

Appellant wrote to his girlfriend in an attempt to dissuade witnesses from testifying or in influencing their testimony.

The PCRA court rejected Appellant's argument as it found that trial counsel had a strategic basis for refraining from objecting to ADA Tokash's testimony. Atty. Fannick testified at the PCRA hearing that he wished to focus on his theory that the Commonwealth had violated Appellant's right to privacy in reading the letter without the permission of Appellant or the letter's intended recipient. On direct appeal, Appellant had argued there was no evidence to establish that anyone other than the district attorney or the police had viewed the letter and thus, contended that there was a governmental intrusion of privacy which exceeded that of any private party.

Regardless of whether the PCRA court properly admitted ADA Tokash's testimony, we find that Appellant has not shown he was prejudiced by the entry of this additional evidence that Appellant attempted to influence witness testimony before his trial. Appellant's girlfriend, Nicole Wenrich, testified at trial that Appellant would call her and send her letters from prison asking her to contact Cruz and Bidgood to influence their testimony. Both Jose Cruz and Tabitha Bidgood testified that either Appellant himself or Appellant's associates approached them and asked them not to testify or to testify in favor of Appellant. Wenrich also shared that Appellant asked her to research how to eliminate gunshot residue from clothing. The actual letter from Appellant to Wenrich was merely cumulative evidence corroborating the aforementioned testimony that Appellant attempted to cover up his role

in the shooting. As a result, we find the PCRA court did not err in dismissing this ineffectiveness claim.

Fourth, Appellant contends that trial counsel was ineffective for failing to object and/or request a complete and adequate reinstruction of malice when the jury requested the definition of malice to be re-read to them during deliberation. However, after reviewing the record, we note that the trial court fully accommodated the jury's request by thoroughly explaining the concept of malice and the differences between first and third degree murder. N.T. Trial at 814-18. As such, there was no reason for counsel to object or request a different instruction. Thus, we find this claim to be without merit.

Fifth, Appellant argues that trial counsel was ineffective for failing to object to the trial court's jury instruction regarding the voluntary manslaughter charge, asserting that the jury was misled into believing they could not convict Appellant of the lesser offense of voluntary manslaughter unless they found Appellant had specific intent to kill the victim. Appellant contends that trial counsel should have asked the trial court to include in this instruction that the jury could find Appellant had intent to kill or seriously injure the victim in convicting him of voluntary manslaughter. Appellant cites **Commonwealth v. Moore**, 398 Pa. 198, 202, 157 A.2d 65, 68 n. 2 (1959), for the principle that "where there is a nonmalicious felonious killing with a specific intent either to kill or to seriously injure, it is voluntary manslaughter." **Id**.

With respect to jury instruction challenges, our Supreme Court has held the following:

> When reviewing a challenge to jury instructions, the reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. A new trial is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury.

**Commonwealth v. Fletcher**, 604 Pa. 493, 546, 986 A.2d 759, 792 (2009) (internal citations and quotations omitted).

Regardless of whether the trial court's instruction was proper,[6] Appellant has not shown any prejudice in counsel's decision not to object as the record contains overwhelming evidence of Appellant's intent to kill the victim. Appellant fired his weapon at the victim several times, hitting several of the victim's vital body parts and piercing several of his vital organs. The jury was free to infer from Appellant's conduct in using a deadly weapon on the victim's vital body parts that Appellant intended to kill the victim. **See Hitcho**, **supra**. The Commonwealth also presented testimony of eyewitnesses that observed Appellant subsequently beating the

---

[6] We note that the Supreme Court has provided that "[v]oluntary manslaughter, imperfect self-defense, requires that the Commonwealth establish that the defendant 'intentionally and knowingly' killed another." **Commonwealth v. Weston**, 561 Pa. 199, 207, 749 A.2d 458, 462 (2000) (quoting 18 Pa.C.S. § 2503(b)).

victim as he lay dying from the gunshot wounds Appellant inflicted. Appellant has not shown it is probable that, but for counsel's failure to object to the instruction, the result of the proceeding would have been different. *See Johnson*, *supra*. This lack of prejudice leads us to conclude that the PCRA court did not err in denying this ineffectiveness claim.

Lastly, Appellant claims trial counsel was ineffective in failing to object to a statement the prosecutor made in closing argument. In reviewing the denial of a motion for a mistrial, we evaluate whether the trial court abused its discretion. *Commonwealth v. Caldwell*, 117 A.3d 763, 774 (Pa. Super. 2015). More specifically, this Court has provided the following standards for reviewing a claim of prosecutorial misconduct in a closing statement:

> it is well settled that any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered. *Commonwealth v. Correa*, 444 Pa.Super. 621, 664 A.2d 607 (1995). Our review of a prosecutor's comment and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. *Commonwealth v. Rios*, 554 Pa. 419, 721 A.2d 1049 (1998). Thus, it is well settled that statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial "unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Fletcher*, 580 Pa. 403, 434–35, 861 A.2d 898, 916 (2004) (quotation and quotation marks omitted). The appellate courts have recognized that not every unwise remark by an attorney amounts to misconduct or warrants the grant of a new trial. *Commonwealth v. Faulkner*, 528 Pa. 57, 595 A.2d 28 (1991). Additionally, like the defense, the prosecution is accorded reasonable latitude, may employ oratorical flair in arguing its version of the case to the jury, and may advance

arguments supported by the evidence or use inferences that can reasonably be derived therefrom. ***Commonwealth v. Carson***, 590 Pa. 501, 913 A.2d 220 (2006); ***Commonwealth v. Holley***, 945 A.2d 241 (Pa.Super. 2008). Moreover, the prosecutor is permitted to fairly respond to points made in the defense's closing, and therefore, a proper examination of a prosecutor's comments in closing requires review of the arguments advanced by the defense in summation. ***Commonwealth v. Chmiel***, 585 Pa. 547, 889 A.2d 501 (2005).

***Commonwealth v. Jaynes***, 135 A.3d 606, 615 (Pa.Super. 2016).

Appellant specifically takes issue with the prosecutor's statement highlighting the fact that Appellant did not have any cuts on his hands after he allegedly attempted to grab the gun from the victim. The prosecutor pointed to the firearm, stating "the slide – if your hand was in the position that [Appellant] said it was, the slide would cut [Appellant's] hand. You heard the evidence that there were no cuts on his hand, no defensive wounds, nothing like that." N.T. Trial, at 757-58. Appellant argues that trial counsel should have objected since the Commonwealth did not present expert testimony to show that Appellant would have cut his hand.

In response, the Commonwealth claims the prosecutor's comment was a reasonable inference supported by the record and showed discrepancies in Appellant's account of the shooting. Moreover, Appellant's trial counsel agreed that the prosecutor's remark was a fair response to trial counsel's own suggestion in his closing statement that Appellant's lack of cuts on his hands showed Appellant did not beat the victim as he lay dying. N.T. Trial at 716; N.T. PCRA Hr'g, 5/27/15, at 104-105.

After viewing the prosecutor's comment in context of the summation of both parties, we agree that the Commonwealth was entitled a degree of latitude to respond to the defense's argument that Appellant's lack of injuries was circumstantial evidence that he did not physically attack the victim. Moreover, even assuming the prosecutor's remark was unwise, it was not so prejudicial as to prevent the jury from weighing the evidence objectively and rendering a true verdict. Although defense counsel did not object to the comment, any prejudice that the comment caused was cured by the trial court's instruction that counsel's arguments are not evidence and should not be considered as evidence. *See Commonwealth v. Thompson*, 660 A.2d 68, 76 (Pa. Super. 1995). A jury is presumed to follow a trial court's instructions. *Id*. Accordingly, we reject Appellant's claim that trial counsel was ineffective in failing to object to the prosecutor's closing statement.

For the foregoing reasons, we affirm the PCRA court's order denying Appellant's petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2016

- 17 -