J-S04027-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TYREL DORN | |
| Appellant | No. 1448 EDA 2016 |

Appeal from the PCRA Order April 25, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003769-2010

BEFORE: SHOGAN, J., OTT, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OTT, J.:                              **FILED APRIL 18, 2017**

Tyrel Dorn appeals from the order entered April 25, 2016, in the Court of Common Pleas of Philadelphia County, dismissing his petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq*., without a hearing.[1] In this timely appeal, Dorn claims the PCRA court erred in not finding trial counsel ineffective for failing to challenge the trial court's jury instructions regarding burglary and possession of an instrument of

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Although a mandatory Pa.R.Crim.P. 907 notice to dismiss without a hearing is not found in the certified record, notice is docketed. However, Dorn is not complaining of a lack of hearing on his petition. Accordingly, we will not remand for formal compliance with Pa.R.Crim.P. 907.

crime.[2]  After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

We quote the underlying facts of this matter from the PCRA court's Pa.R.A.P. 1925(a) opinion.

On January 12, 2010, at approximately 2:00 AM, the first victim in this case, Mohammad Sall, was returning home after finishing work as a cab driver. As Mr. Sall walked up the front steps of his home in Southwest Philadelphia, [Dorn], clad in a black ski mask, snuck up behind Mr. Sall, pointed a Glock 9 millimeter handgun at his head, and demanded money.  Mr. Sall took out his wallet and gave [Dorn] several hundred dollars. Not satisfied, [Dorn] then forced Mr. Sall at gunpoint into his home, where he resided with Mr. Aboubacar Diallo, Mr. Abirahim Diallo and his wife Miriama Diallo, and their two young children, who at the time were one year and three years old.

Once inside the house, [Dorn] then forced Mr. Sall at gunpoint into the bedroom where Aboubacar Diallo was sleeping. [Dorn] demanded money from Aboubacar, but since Aboubacar had none to give, [Dorn] took Aboubacar's wallet and cell phone. [Dorn] then forced both men onto the floor and went in search of his next victims.

Unbeknownst to [Dorn], Abirahim and Miriama Diallo had been awakened by the sounds of the unfolding armed robbery in their home, and had already called police before [Dorn], still armed and masked, forced his way into the room where they had been

_____

[2] On May 2, 2016, Dorn was directed to file a Pa.R.A.P. 1925(b) concise statement within 21 days.  Counsel did not file the order until June 11, 2016.  Therefore, the 1925(b) statement was untimely.  While the PCRA court noted the untimely filing, the PCRA judge nevertheless addressed Dorn's claim.  Accordingly, we will also address Dorn's claims.  **See Commonwealth v. Brown**, 145 A.3d 184 (Pa. Super. 2016) (where the trial court addresses the issues raised in an untimely Rule 1925(b) statement, we need not remand but may address the issues on their merits).

sleeping with their two young children. Terrified, Miriama immediately offered [Dorn] her money. [Dorn] then pointed the gun at Abirahim and demanded his money as well. After receiving approximately $400, [Dorn] was still unsatisfied. He pointed his gun at the three year old child and demanded more money. Hysterical, Miriama offered [Dorn] her jewelry, but he insisted on cash.

At this point, terrified that [Dorn] was going to kill his child, Abirahim lunged at [Dorn] in an attempt to disarm him. In the ensuing life and death struggle, both men fell to the ground, and [Dorn's] gun discharged. Abirahim was shot one time in the left torso area. As Abirahim tried to return to his feet, [Dorn] once again pointed the gun at him, this time at his head, and pulled the trigger. In a moment of divine intervention for Abirahim and his family, [Dorn's] gun jammed.

At this same moment, several uniformed Philadelphia police officers had arrived on the scene and observed these dramatic events unfolding before their eyes. According to responding police officers Tiffany Richardson and Amir Watson, when they arrived on location they heard scuffling sounds from the second floor. They ran up the steps and observed [Dorn] pointing the gun at the victim. [Dorn] turned and looked at the officers and pointed his gun in the Officers' direction. The Officers immediately fired their own weapons at [Dorn]. Officer Richardson fired "five to seven" shots, and Officer Watson fired two shots. [Dorn] was hit by one shot, and the gun he was holding was also hit by one of the officer's bullets. During the trial, the officers' accounts of these minutes are slightly varied. However, this is not surprising in light of the chaotic, terrifying, crowded, and dangerous conditions that existed during this incident. Furthermore, their testimony was consistent on the matters relevant to the charges against [Dorn].

After he was shot, [Dorn] put his hands up as if to surrender. As Officer Richardson went in to capture [Dorn], [Dorn] suddenly kicked the bedroom door shut, shattered open the glass bedroom window, jumped out that window onto the roof of the house, and tried to flee. [Dorn] managed to jump over the roofs of several of the attached row homes before he finally collapsed on a neighboring roof top. When the Officers apprehended him on the neighboring roof, [Dorn] was bleeding from the gunshot

wound and the money from the robbery (some of it bloodied) was on his person and strewn about him.

At trial, which commenced on December 13, 2011, [Dorn] testified on his own behalf. [Dorn] admitted to the burglary and robberies. However, he stated that he did not intend for his gun to discharge when he was struggling with Abirahim and that it was an accidental discharge. He also denied ever pointing his gun at the police officers.

PCRA Opinion, 6/16/2016, at 2-3, *quoting* Trial Court Opinion, 1/28/13.[3]

Our standard of review is as follows:

This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

*Commonwealth v. Benner*, 147 A.3d 915, 919 (Pa. Super. 2016) (citation omitted).

Further, regarding ineffective assistance of counsel:

The governing legal standard of review of ineffective assistance of counsel claims is well-settled:

---

[3] After the conclusion of testimony, on December 19, 2011, a jury convicted Dorn of burglary, robbery, attempted murder, aggravated assault, aggravated assault on police, VUFA and PIC. 18 Pa.C.S. §§ 3502, 3701, 901/2505, 2702, 2702.1, 6106/6108 and 907, respectively. He received an aggregate sentence of six to twelve years' incarceration. He pursued a direct appeal that afforded him no relief.

[C]ounsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. This Court has described the *Strickland* standard as tripartite by dividing the performance element into two distinct components. Accordingly, to prove counsel ineffective, the petitioner must demonstrate that (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) the petitioner was prejudiced by counsel's act or omission. A claim of ineffectiveness will be denied if the petitioner's evidence fails to satisfy any one of these prongs.

Furthermore, "[i]n accord with these well-established criteria for review, [an appellant] must set forth and individually discuss substantively each prong of the *Pierce* test."

*Commonwealth v. Roane*, 142 A.3d 79, 88 (Pa. Super. 2016) (citations omitted).

Finally,

When reviewing a challenge to jury instructions, the reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. A new trial is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury.

*Commonwealth v. Faurelus*, 147 A.3d 905, 914 (Pa. Super. 2016) (citation omitted).

With these standards in mind, we examine Dorn's claim that trial counsel was ineffective for failing to challenge the trial court's jury

- 5 -

instructions regarding burglary and possession of an instrument of crime (PIC).

In the first part of his claim, Dorn argues the trial court improperly informed the jury that the address in question was an occupied structure and therefore Dorn was guilty of burglary. The trial court gave the following jury instruction regarding burglary.

> Okay. Burglary, as you know, he was charged with burglary. And to find the defendant guilty of this offense, you must find that all of the following elements have been proven beyond a reasonable doubt:
>
> First, that the defendant entered the residence of 6642 Dicks Avenue.
>
> Second, that the defendant entered the residence at 6642 Dicks Avenue with the intent to commit a crime inside.
>
> Third, that the residence of 6642 Dicks Avenue was not open to the public at the time.
>
> Fourth, that the defendant did not have permission or lawful authority to enter.
>
> And fifth, that the residence at 6642 was, in fact, an occupied structure, which is any structure that's adapted for overnight accommodation by persons. I think there's no question it was an occupied structure here.

N.T. Trial, 12/19/2011, at 106-07.

Dorn's sole argument is that the trial court improperly told the jury the structure was occupied. This argument is unavailing. Initially, we note that the trial court properly instructed the jurors that they were "the sole and only judges of the facts." *Id*. at 77. The trial court further instructed the jurors,

If, in my instructions to you, I refer to some particular evidence, it is your recollection of that evidence and yours alone that governs.

You are not bound by my recollection of the facts, nor by the recollection of counsel in their arguments to you. Nor are you to conclude that any evidence which I call to your attention or which counsel has called to your attention is the only evidence which you should consider.

*Id.* at 78-79.

The PCRA court determined Dorn failed to demonstrate any prejudice in that he admitted during his own testimony that he encountered a number of people inside the residence. We agree. Our review of Dorn's testimony clearly shows Dorn admitted there were, in addition to the original victim whom Dorn encountered on the front porch, three other adults inside 6642 Dicks Avenue at the time Dorn entered at approximately 2:00 A.M. *See* N.T. Trial, 12/16/2011, at 133-39. Additionally, Dorn admitted that the building was adapted for overnight accommodation by testifying how he entered bedrooms, *id*. at 135, and how one of the victims jumped out of bed. *Id*. at 136. Further, because Dorn admitted these salient facts, defense counsel had no reason to object to the trial court's instruction that acknowledged Dorn's admissions.

Given that the trial court explicitly told the jurors they were the sole finders of fact and that they were not to rely on the judge's nor counsel's recollections, and that Dorn clearly admitted that 6642 Dicks Avenue was an occupied structure, he suffered no prejudice from the trial court's statement.

The same reasoning applies to the second portion of Dorn's argument

regarding possession of an instrument of crime. In relevant pert, the trial

judge charged the jury as follows:

> Just so you know, the definition for possession of an instrument of crime is if it's an instrument of crime, it must be specifically adapted for criminal use, or anything that is used for criminal purposes and possessed by the defendant at the time of the alleged offense, under circumstances not manifestly appropriate for the lawful uses it may have.

> Basically, what I'm saying here is there are instruments, there are items that you can have, like a bat or a knife or even a gun, you can have for lawful purposes. There are reasons that people might have these items, but in this case the person possessed it with the intent to use it criminally.

> So, you understand that, then, it's a lot of legal jargon for what's common sense.

N.T. Trial, 12/19/2011, at 108-09.

Dorn argues the phrase "but in this case the person possessed it with

the intent to use it criminally" told the jurors that Dorn was guilty of PIC.

Once again, the trial court determined that Dorn demonstrated no prejudice

in that he admitted to possessing a gun for criminal purposes. Specifically,

Dorn testified on direct examination:

> Q: [W]hat did you do when you got to 6642 Dicks Avenue?

> A: I approached a gentleman that I see walking up the steps.

> Q: Did that gentleman testify in here in this courtroom earlier this week?

> A: Yes, he did.

> Q: Do you recall him to be Mr. Sall?

- 8 -

A: Yes.

Q: Now, when you approached him, what, if anything, did you have in your hands?

A: I had a semi-auto weapon – semiautomatic weapon, excuse me.

…

Q: What, if anything, did you say to Mr. Sall?

A: I asked him did he have any money.

Q: And what did he do or say in reply?

A: He kind of, like, kind of through [sic] his hands in the air and said, "Just take the money."

Q: What did you do?

A: I stood there until he reached in his pocket and he pulled out some money.

Q: Did you take the money?

A: Yes.

N.T. Trial, 12/16/2011, at 127-29.

On cross-examination, Dorn testified as follows:

Q: You had your ski mask on, right?

A: Yes.

Q: You had your gun in your hand, correct?

A: Yes.

Q: And you're pointing the gun right at Mohommad Sall, correct?

A: Yes?

Q: And when you did that, what part of his body; you're pointing at his chest or his head?

A: I would say his upper body. I wouldn't say more like, you know, anywhere directly, but his upper half.

Q: When you're pointing the gun and [sic] Mohommad Sall, you're doing it because you know it's going to make him likely to follow your commands, correct?

A: Yes.

Q: Okay. So you didn't ask him for money, you commanded him to give you his money, didn't you?

A: I asked him.

Q: Politely?

A: Well, I mean, it wasn't really forcefully.

*Id*. at 148-49.

Having admitted to using the gun to threaten and rob one of the victims, there can be no doubt that Dorn admitted his guilt to the PIC charge. Accordingly, we agree with the trial court's determination that Dorn failed to demonstrate any prejudice resulting from the jury instruction on PIC.[4]

_____

[4] Although the PCRA court did not analyze any other prong of the ineffective assistance of counsel test, we also note that counsel would have no reason to object to the charges. It is clear that as a matter of strategy, Dorn admitted to certain aspects of his criminal activity, while denying others. In his opening statement, Dorn's counsel told the jurors as much. *See* N.T. Trial, 12/14/2011, at 77. Having admitted the residence was occupied and that he used the gun to rob Sall, it would make no sense to object to that which had been freely admitted.
*(Footnote Continued Next Page)*

In light of the foregoing, we find the PCRA court's determination that trial counsel was not ineffective is supported by the record and is free from legal error. Accordingly, Dorn is not entitled to relief.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/18/2017

_(Footnote Continued)_ ——————————