J-S36030-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL FELICIANO, | |
| Appellant | No. 2417 EDA 2016 |

Appeal from the PCRA Order of June 30, 2016
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0000497-2011

BEFORE: PANELLA, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.: **Filed July 3, 2017**

Appellant, Michael Feliciano, appeals from the order entered on June 30, 2016, denying relief on his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. C.S. § 9541 *et seq*. We affirm.

The trial court summarized the facts of the case in its direct appeal opinion as follows:

> At the time of the events on trial, [Appellant] and his wife, Erica Brandau, were separated. Ms. Brandau was living at the Racquet Club Apartments in Middletown Township, Bucks County. [Appellant] resided in Philadelphia. After her separation from [Appellant], Ms. Brandau began dating the victim, Edwin Bayron. On October 13, 2010, approximately two weeks prior to the assault in the instant case, the victim and [Appellant's] wife were at a local park. Just as they were about to leave the park, [Appellant] approached the victim and punched him in the back of his head. Ms. Brandau fled the area in her car. The victim was able to wrestle [Appellant] to the ground. [Appellant] fled the scene after a bystander called the police.

On October 30, 2010, shortly after 11:00 p.m., the victim and Ms. Brandau were standing outside of Ms. Brandau's apartment when they saw [Appellant] and an unidentified man walking toward them. Upon seeing [Appellant] and his companion, Ms. Brandau screamed, ran inside her apartment, and locked the door leaving the victim outside. The victim was unarmed. As [Appellant] approached, he stated, "Didn't I tell you not to mess with my wife?" After an exchange of words between the victim and [Appellant], [Appellant] charged the victim. As the two men began to fight, the victim was able to maneuver [Appellant] up against the apartment door. When he did so, the unidentified man pulled the victim away from [Appellant]. Thereafter, [Appellant] again charged the victim. Ultimately the victim was able to wrestle [Appellant] to the ground. The victim was able to pin [Appellant's] upper arms to the ground but was unable to control [Appellant's] forearms and hands as [Appellant] continued to struggle with him for one or two minutes. When Ms. Brandau called out that the police were on their way, the unidentified man who had been standing off to the side watching the assault, approached the victim and, using both hands, pulled him off of [Appellant]. The victim got to his feet and realized for the first time that he had been stabbed. The victim testified that he never saw a knife.

Ms. Brandau testified that after she went inside her apartment, she directed her son, Christian Rivera, to call 911. Ms. Brandau testified that when she looked out the second floor window of her apartment, she saw the victim and [Appellant] struggling on the ground. The unidentified man who had arrived with [Appellant] was standing nearby watching them.

Christian Rivera [] testified that he was home the night of the stabbing and was awakened by the sound of arguing. He testified that he could not see anything from his upstairs window. He stated that at his mother's direction, he called 911. During that call, Christian told the dispatcher that [Appellant] was at the house and that the victim had been stabbed. While speaking with the dispatcher, Christian told [Appellant] to leave the house, saying "Don't do this."

In response to the 911 call, police officers from the Middletown Township Police Department responded to the Racquet Club Apartments. Upon arrival, an officer saw the victim outside of the apartment, bleeding from the left side of his body. A search of the property revealed no weapons on scene. A search of the area the next day likewise failed to produce any weapon.

The victim was transported by ambulance to St. Mary's Medical Center. He remained hospitalized for two days. During the assault, he had been stabbed eleven times. Photographs of the victim taken at the hospital reveal large slicing wounds to his left side between his left hip and waist, stab wounds to the left side of his upper back, his left shoulder, the left side of his neck and the left side of his head.

While incarcerated at the Bucks County Correctional Facility awaiting trial, [Appellant] spoke by telephone to an unidentified female. During these conversations, [Appellant] made inconsistent statements about what occurred the night of the offense. First, [Appellant] claimed that the victim was not, in fact, stabbed. [Appellant] claimed the victim stabbed him. Later, [Appellant] admitted to assaulting the victim and attempted to explain the victim's injuries as having been accidentally inflicted by the victim to himself. Finally, [Appellant] claimed that Ms. Brandau tried to stab [Appellant] and suggested that in doing so, she stabbed the victim by accident.

Trial Court Opinion (direct appeal), 8/27/2012, at 1-4 (record citations omitted).

The procedural history of this case is as follows. On August 11, 2011, a jury convicted Appellant of: attempted murder,[1] two counts of aggravated

---

[1] 18 Pa.C.S.A. §§ 901(a), 2502(a).

assault,[2] simple assault,[3] and possessing an instrument of crime.[4] The jury acquitted Appellant of: conspiracy to commit aggravated assault,[5] conspiracy to commit simple assault,[6] and stalking.[7] On March 23, 2012, the trial court sentenced Appellant to a term of ten to 20 years' incarceration on the attempted murder charge, and a consecutive five-year probationary period on the possession of an instrument of crime charge.

Appellant filed a post-sentence motion on April 2, 2012. The trial court denied that motion by order dated June 7, 2012. This court affirmed the judgment of sentence on April 18, 2013, and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on October 22, 2013.

The trial court appointed counsel to represent Appellant on March 24, 2014, following his timely *pro se* PCRA petition, filed on March 13, 2014. PCRA counsel filed an amended petition on May 15, 2014. A PCRA hearing

_____

[2] 18 Pa.C.S.A. §§ 2702(a)(1), (a)(4).

[3] 18 Pa.C.S.A. § 2701(a)(1).

[4] 18 Pa.C.S.A. § 2709.1(a)(1).

[5] 18 Pa.C.S.A. §§ 903(c), 2702(a)(1), (a)(4).

[6] 18 Pa.C.S.A. §§ 903(c), 2701(a)(1).

[7] 18 Pa.C.S.A. § 2709.1(a)(1).

was held on February 19, 2016. The PCRA court denied Appellant's petition by order dated June 30, 2016. This timely appeal followed.[8]

Appellant raises the following issues on appeal:

1. [Was trial counsel ineffective in failing] to call eyewitness, Lawrence Cooper, at trial who would have provided exculpatory evidence on Appellant's behalf[?]

2. [Was trial counsel ineffective in failing] to call Keyani Smith as a witness to rebut the testimony of a key Commonwealth witness, Erica [Brandau], and who would have explained that Appellant had no ill-intent in going to her home on the night in question[?]

3. [Was trial counsel ineffective in failing] to call a witness regarding the Complainant's medical records [which stated] that he was "stabbed by an unknown assailant from behind"[?]

4. [Was trial counsel ineffective in failing] to present evidence regarding Appellant's previous back injury, which would have proved Appellant was physically incapable of committing the crimes of which he was convicted[?]

5. [Was trial counsel ineffective in failing] to properly redact Appellant's medical records, which contained multiple, highly prejudicial references to Appellant "being cleared for incarceration"[?]

6. [Was trial counsel ineffective in failing] to request a pre-sentence investigation on Appellant's behalf[?]

Appellant's Brief (capitalization removed) at 4-5.[9]

---

[8] By order dated August 11, 2016, the PCRA court required Appellant to file a concise statement of errors complained of on appeal under Pa.R.A.P. 1925(b) within twenty-one days. Appellant filed a timely concise statement on August 24, 2016. The PCRA court filed its Pa.R.A.P. 1925(a) opinion on November 10, 2016.

[9] We have renumbered these issues for ease of disposition.

"In reviewing the denial of PCRA relief, we examine whether the PCRA court's determinations are supported by the record and are free of legal error." *Commonwealth v. Mitchell*, 105 A.3d 1257, 1265 (Pa. 2014) (internal quotation marks and citations omitted). Each of the issues raised by Appellant involves a claim of ineffective assistance of trial counsel.

> A PCRA petitioner will be granted relief on this ground only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place."

*Commonwealth v. Smith*, 17 A.3d 873, 883 (Pa. 2011), *quoting* 42 Pa.C.S § 9543(a)(2)(ii).

Generally, "counsel is presumed to be effective." *Commonwealth v. Patterson*, 143 A.3d 394, 398 (Pa. Super. 2016) (citation omitted). Pursuant to *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a claim of ineffective assistance of counsel requires a showing that counsel's performance was deficient, and the deficiencies prejudiced the defendant. To succeed on a claim of ineffective assistance of counsel in Pennsylvania, a petitioner must prove, "(1) the legal claim underlying the ineffectiveness claim has merit; (2) counsel's action or inaction lacked any reasonable basis designed to effectuate petitioner's interest; and (3) counsel's action or inaction resulted in prejudice to petitioner." *Commonwealth v. Mason*, 130 A.3d 601, 618 (Pa. 2015) (citation omitted). "The failure to satisfy any

one of the three prongs will cause the entire claim to fail." ***Commonwealth v. Faurelus***, 147 A.3d 905, 911 (Pa. Super. 2016) (citation omitted).

In his first three issues, Appellant argues that his trial counsel was ineffective in failing to call three different witnesses. To prevail on such claims, Appellant must establish, "(1) the witnesses existed; (2) the witnesses were available to testify; (3) counsel knew, or should have known, the witnesses existed; (4) the witnesses were willing to testify; and (5) the absence of the witnesses' testimony was so prejudicial that it denied [Appellant] a fair trial." ***Commonwealth v. Solano***, 129 A.3d 1156, 1166 (Pa. 2015), *citing* ***Commonwealth v. Sneed***, 45 A.3d 1096, 1109 (Pa. 2012).

Appellant's first complaint of ineffectiveness for failure to call a witness involves a friend of Brandau's son, Lawrence Cooper ("Cooper"). Appellant contends that Cooper could have provided "exculpatory evidence" on Appellant's behalf. Appellant's Brief at 4. Cooper did not testify at the PCRA hearing. Instead, Appellant relied on a notarized, signed statement from Cooper, presented at a post-sentence evidentiary hearing.

The statement alleged that from the second floor, Cooper was able to see the altercation between Appellant and victim. Cooper's statement asserts that he saw the unidentified man pick up a knife from a nearby table, but specifically denies that he saw the man stab anyone. Appellant's Brief in Support of PCRA Petition, 5/24/16, Exhibit "A" at ¶ 11, 15. Cooper's

statement does not establish that he was available or willing to testify at trial on behalf of Appellant. Therefore, this claim fails the second and forth prong of the **Sneed** test.

Furthermore, Cooper's statement is not sufficient to establish prejudice such that, absent his testimony, Appellant could not have received a fair trial. As the trial court noted in its direct appeal opinion, "[t]he impact of Cooper's proposed testimony is ... questionable. He, like all of the other witnesses, did not see who stabbed the victim. Moreover, there are substantial questions regarding the reliability and credibility of Cooper's statement." Trial Court Opinion (direct appeal), 8/27/2012, at 13. Cooper's account of the events did not come to light until, by happenstance, he met Appellant in the Bucks County Correctional Facility. He did not make a statement to police at the time of the incident, and the record is free of any indication that he told Ms. Brandau or her son his version of the story prior to meeting Appellant. Therefore, the decision of the PCRA court is free of legal error because trial counsel's failure to call Cooper as a witness does not amount to ineffective assistance of counsel.

Appellant's second claim of ineffectiveness for failure to call a witness involves his niece, Keyani Smith. He contends that her testimony would have rebutted the testimony of a "key Commonwealth witness, Erica [Brandau]," and proved he had no "ill intent" when he arrived at the scene on the night in question. Appellant's Brief at 4. Ms. Smith testified at the

PCRA hearing that she was at her grandmother's house with Appellant on the night of the incident, prior to his departure to Ms. Brandau's home. N.T., 2/19/16, at 71. Her testimony was that she witnessed Appellant's phone ringing a number of times while displaying Ms. Brandau's name. *Id.* Further, she alleges that, after speaking with Ms. Brandau on the phone, Appellant told her he was going to pick up his son from Ms. Brandau's residence. *Id.* at 72. Appellant argues this testimony would have established that Ms. Brandau was aware that Appellant was coming to her home (contrary to her testimony at trial) and that he had a legitimate reason for his appearance.

This argument fails to establish the requisite prejudice for two reasons. First, Ms. Smith admitted on cross examination that she heard only the Appellant's side of the alleged phone conversation, so she could not testify that Ms. Brandau invited or expected Appellant to arrive at her home that night. N.T., 2/19/16, at 75. Second, the only statement Ms. Smith heard was that of Appellant saying he was going out to pick up his son. Although probably admissible as an exception to hearsay under Pa. Rules of Evidence 803(3), the admission of this statement would not have been outcome determinative. Appellant arrived at the house with an unknown accomplice, close to midnight, and there is nothing in the record to suggest he asked about his two-year-old son before initiating the altercation. As such, the

PCRA court was correct in determining Appellant's second claim of ineffectiveness for failure to call a witness is without merit.

In his final claim of ineffectiveness for failure to call a witness, Appellant argues that trial counsel should have called a live witness from St. Mary Medical Center to testify that, during treatment, the victim stated he was "stabbed by an unknown assailant from behind." Appellant's Brief at 4. Appellant's contention that the victim made such a statement at the hospital is based on the victim's medical records, which were admitted at trial as an exhibit for the Commonwealth. Those records include the statement, "42-year-old male, stabbed multiple times by an unknown assailant during an altercation." Commonwealth Exhibit C-5, (8/9/11), at 15. Appellant argues that because it was clear the victim was familiar with Appellant, and was on top of him during the altercation, that this statement is inconsistent with the Commonwealth's theory of the case. Appellant's Brief at 22. However, the statement is included on a page titled, "Discharge Summary," and there is no indication that it was the victim's account of events. Commonwealth Exhibit C-5, (8/9/11), at 15.

Furthermore, no witness testified at the PCRA hearing as to the victim's alleged statements, and Appellant's brief makes no mention of a particular witness who could have done so. Therefore, Appellant has not established that such a witness existed, was available, or willing to testify. He argues, despite admission of the victim's medical records, that, "it is

unclear whether the jurors saw or considered this important evidence." Appellant's Brief at 22-23. However, in his closing statement, trial counsel mentioned these records specifically, and argued at length that they exonerated Appellant. N.T., 8/10/11, at 184-187. There is no doubt that the jury considered this information. Trial counsel will not be deemed ineffective for failing to call a witness whose testimony would simply be cumulative of other evidence. **Commonwealth v. Tharp**, 101 A.3d 736 (Pa. 2014). Appellant has failed to satisfy the **Sneed** test in his final claim of ineffectiveness for failing to call a witness.

Next, Appellant argues his trial counsel was ineffective for failing to introduce evidence of a prior back injury that allegedly rendered him incapable of committing the crimes for which he was convicted. Appellant's Brief at 4. At the PCRA hearing, Appellant introduced medical records from a 2007 motorcycle injury. He also testified that from the time of the injury through the time of the PCRA hearing, his back prevented him from performing many physical acts. N.T., 2/19/16, at 19. However, Appellant's medical records from the date of the altercation with the victim indicate that his back was examined and he was determined to have, "full range of motion, [and] no back tenderness." Defense Exhibit D-3 (trial), at 3. Therefore, trial counsel's failure to introduce evidence of the old injury at trial was not prejudicial to Appellant.

Furthermore, counsel is afforded a great deal of discretion in determining tactics and strategy. ***Fowler, supra***. Counsel will only be deemed ineffective if the strategy employed is, "so unreasonable that no competent lawyer would have chosen it." ***Commonwealth v. Ervin***, 766 A.2d 859, 862-863 (Pa. Super. 2000) (citation omitted). Here, trial counsel testified at the PCRA hearing that his decision not to introduce such evidence had a reasonable basis. N.T., 2/19/16, at 93. First, based on the positions of Appellant and the victim during the altercation (which the defense and Commonwealth agreed upon), trial counsel believed Appellant's back was not an issue. ***Id.*** He felt that if Appellant argued he had a bad back, the Commonwealth would counter by arguing that is why he brought another man and a knife with him. ***Id.*** Therefore, Appellant has failed to demonstrate that counsel's performance deviated from the standards ordinarily demanded of defense counsel or that any such deviation prejudiced him. The PCRA court was correct in denying Appellant relief.

Appellant's fifth claim argues that trial counsel was ineffective in failing to properly redact his medical records. Appellant's Brief at 5. At trial, Appellant's medical records from the day after the incident were admitted as an exhibit for the defense to show that he too suffered stab wounds. Trial counsel inadvertently failed to redact two references to Appellant being "medically cleared for incarceration." N.T. 2/19/16, at 85; Appellant's Brief in Support of PCRA Petition, 5/24/16, Exhibit "B," at 2. Appellant analogizes

these references to incarceration in the medical records to a defendant having to come to court in handcuffs or a prison uniform. Appellant's Brief at 24. He cites to **Commonwealth v. Cruz**, 311 A.2d 691 (1973), arguing that the references to incarceration, like wearing prison garb in court, "brands him as convicted in the state's eyes." However, the rationale behind disallowing defendants to be dressed in prison uniforms at trial is to avoid presenting the jury with a "constant reminder of the accused's condition." **Commonwealth v. Johnson**, 838 A.2d 663, 681 (Pa. 2003). Two short references to incarceration in Appellant's medical records are not a prejudicial constant reminder, like courtroom appearance.

Furthermore, "there is no rule in Pennsylvania which prohibits reference to a defendant's incarceration awaiting trial or arrest for the crimes charged." **Id.** As such, the Commonwealth was permitted to introduce evidence of phone calls recorded by the correctional facility between Appellant and an unidentified female. N.T., 8/10/11 at 160-163. Thus, the jury was already aware that at some point between his arrest and trial, Appellant was incarcerated. N.T., 8/10/11, at 163. The brief references to incarceration, which were not redacted from Appellant's medical records, are not sufficient to establish prejudice.

Finally, Appellant contends his trial counsel was ineffective for failing to request a pre-sentence investigation. Appellant's Brief at 5. Appellant contends he was prejudiced by counsel's decision not to request a

pre-sentence investigation, "because it would have brought to the court's attention medical issues and obtained information that the conduct he was convicted of did not match his personality or character." *Id.* at 28. However, as previously discussed, counsel has broad discretion in determining strategy, and will not be deemed ineffective unless no reasonable attorney would have chosen the same approach. *Ervin*, 766 A.2d 859, 862-863. At the PCRA hearing, trial counsel testified that he never requests pre-sentence investigations because they, "never, ever, ever, ever help[] the defense." N.T. 2/19/16, at 87.

Appellant's contention that the pre-sentence investigation would have shown the crimes of which he was convicted did not match his personality is without merit. Trial counsel introduced witnesses at sentencing to testify to his character and relationship with his family. N.T., 3/23/12, at 9-18. Furthermore, a pre-sentence report could have included information about Appellant's history of violent crimes. And, as previously discussed, trial counsel determined that information regarding Appellant's medical history would not be considered favorably to him. Moreover, had Appellant wanted to introduce information about his medical condition at sentencing, he could have done so without a pre-sentence report. We agree with the PCRA court that, "trial counsel's decision to control the information concerning Petitioner's background through presentation of witnesses at sentencing was reasonable." PCRA Court Opinion, 11/10/16, at 15.

Order Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/3/2017