J-S43012-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| | : | |
| ANTHONY MICHAEL COBB | : | |
| | : | |
| Appellant | : | No. 1611 MDA 2018 |

Appeal from the Judgment of Sentence Entered August 31, 2018
In the Court of Common Pleas of Franklin County
Criminal Division at No(s):  CP-28-CR-0001890-2016

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| | : | |
| ANTHONY MICHAEL COBB | : | |
| | : | |
| Appellant | : | No. 1613 MDA 2018 |

Appeal from the Judgment of Sentence Entered August 31, 2018
In the Court of Common Pleas of Franklin County
Criminal Division at No(s):  CP-28-CR-0000947-2016

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| | : | |
| ANTHONY MICHAEL COBB | : | |
| | : | |
| Appellant | : | No. 1616 MDA 2018 |

Appeal from the Judgment of Sentence Entered August 31, 2018
In the Court of Common Pleas of Franklin County
Criminal Division at No(s):  CP-28-CR-0000950-2016

BEFORE:   GANTMAN, P.J.E., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY GANTMAN, P.J.E.:          **FILED NOVEMBER 08, 2019**

Appellant, Anthony Michael Cobb, appeals from the judgment of

_____
*   Former Justice specially assigned to the Superior Court.

sentence entered in the Franklin County Court of Common Pleas, following his jury trial convictions for one count each of attempted murder, aggravated assault, recklessly endangering another person, solicitation to commit first-degree murder, conspiracy to commit first-degree murder, and three counts of intimidation of a witness or victim.[1]  We affirm.[2]

In its opinions, the trial court accurately set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Appellant raises the following issues for our review:

> DID THE TRIAL COURT COMMIT REVERSIBLE ERROR WHEN IT DENIED APPELLANT'S REQUEST TO SUPPRESS CERTAIN LETTERS AUTHORED BY HIM DURING HIS INCARCERATION WHICH WERE SEIZED AND COPIED BY THE FRANKLIN COUNTY JAIL AFTER THEY HAD BEEN SEALED BY APPELLANT, AND WHERE THEIR OPENING WAS NOT FOR ANY "LEGITIMATE CORRECTIONAL INTEREST IN ORDER OR SECURITY OR FOR THE PROTECTION OF THE PUBLIC"?
>
> DID THE TRIAL COURT COMMIT REVERSIBLE ERROR WHEN IT DENIED APPELLANT'S REQUEST TO SEVER ALL COUNTS OF INTIMIDATION OF A VICTIM/WITNESS IN DOCKET 947 OF 2016, FROM THE TRIAL IN DOCKET 1890 OF 2016, SOLICITATION AND CONSPIRACY TO COMMIT MURDER OF THE FIRST DEGREE, WHERE THE OFFENSES OF INTIMIDATION OF A VICTIM/WITNESS WERE NOT BASED ON THE SAME ACT OR TRANSACTION AS THE CONSPIRACY OR SOLICITATION TO COMMIT MURDER, AND WHERE THE

---

[1] 18 Pa.C.S.A. §§ 901 (Section 2502 related); 2702(a)(1); 2705; 902 (Section 2502(a) related); 903 (Section 2502(a) related); 4952(a)(2), respectively.

[2] Appellant filed separate notices of appeal at each underlying trial court docket.  Thus, he complied with the dictates of ***Commonwealth v. Walker***, 646 Pa. 456, 185 A.3d 969 (2018) (requiring as of June 1, 2018, separate notices of appeal from single orders which resolve issues arising on separate trial court docket numbers).  This Court consolidated the cases for appeal.

EVIDENCE WAS NOT CAPABLE OF SEPARATION BY THE JURY?

DID THE COMMONWEALTH PRESENT SUFFICIENT EVIDENCE TO SUPPORT THE CONVICTIONS FOR CRIMINAL ATTEMPT—MURDER, SOLICITATION AND CONSPIRACY TO COMMIT MURDER, RECKLESSLY ENDANGERING ANOTHER PERSON, AND 3 COUNTS OF INTIMIDATION OF A VICTIM/WITNESS?

(Appellant's Brief at 5-6).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Jeremiah D. Zook, we conclude Appellant's issues merit no relief. The trial court opinions accurately discuss and properly dispose of the questions presented. (*See* Trial Court Opinion, filed March 20, 2018, at 2-19; Rule 1925(a) Opinion, filed October 25, 2018, at 4-6) (finding: **(1)** inmate generally has no constitutional right to privacy in non-privileged mail; even if trial court was required to consider policies/procedures of correctional facility, Appellant's claim still fails; Commonwealth established that inmates at Appellant's correctional facility are instructed to put their **unsealed** outgoing mail in designated box outside housing unit; this directive is included in inmate handbook, which Appellant received; fact that Appellant sealed his letter, in direct contravention of policy, did not create reasonable expectation of privacy in Appellant's non-privileged mail; **(2)** at docket 947-2016 (intimidation charges), Appellant's letter to Ms. Stottlemyer (girlfriend of Appellant's cohort, Mr. Troskoski) was probative of events charged at docket 950-2016 (attempted murder and related charges)

and docket 1890-2016 (solicitation and conspiracy charges), as it related to whether Mr. Troskoski was cooperating with authorities; Appellant's conduct at docket 950-2016 and docket 1890-2016, provided motive for letter, and letter itself was evidence of Appellant's involvement with Mr. Troskoski, as Appellant asked Ms. Sottlemyer to tell Mr. Troskoski not to cooperate with law enforcement; jury could separate charges related to this letter from charges at other dockets; regarding letter Appellant sent to Mr. Troskoski, content of letter related to drug case no longer pending before this court, so that letter was neither relevant nor probative of criminal charges at other dockets; thus, court granted severance for only count two of docket 947-2016; regarding letters Appellant sent to Ms. Richardson and Ms. Shy, they were probative of conduct at docket 950-2016 and docket 1890-2016, because Appellant instructed recipients what to say about him regarding cases; further, allegations at docket 950-2016 and docket 1890-2016 would have been admissible at separate trial for intimidation charges because they established motive for Appellant's letters; **(3)** jury convicted Appellant of eight offenses; Appellant failed to identify in concise statement which offenses lacked sufficient evidence or which elements of crimes Appellant challenged; Appellant's vague Rule 1925(b) statement waived his sufficiency issue on appeal). Accordingly, we affirm on the basis of the trial court opinions.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/08/2019

IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT
OF PENNSYLVANIA-FRANKLIN COUNTY BRANCH

COMMONWEALTH OF PENNSYLVANIA,      CRIMINAL ACTION

     CP-28-CR-0000947-2016
       VS.      CP-28-CR-0000950-2016
     CP-28-CR-0001890-2016

ANTHONY MICHAEL COBB,

           JUDGE JEREMIAH D. ZOOK
       Defendant

## OPINION SUR. PA.R.A.P. 1925

### PROCEDURAL HISTORY

In docket CP-28-CR-0000950-2016, the Defendant was charged on May 6, 2016, with one (1) count of Attempted Murder,[1] one (1) count of Aggravated Assault,[2] one (1) count of Person Not to Possess Firearm,[3] and one (1) count of Recklessly Endangering Another Person.[4] On June 7, 2016, all charges were bound over to this court for trial.

In docket CP-28-CR-0000947-2016, the Defendant was charged on June 3, 2016, with four (4) counts of Intimidation of Witnesses/Victims.[5] On June 7, 2016, all charges were bound over to this court for trial.

In docket CP-28-CR-0001890-2016, the Defendant was charged on August 16, 2016, with one (1) count of Solicitation to Commit Murder and one (1) count of Conspiracy to Commit

---

[1] 18 Pa.C.S. § 901; 18 Pa.C.S. § 2502.
[2] 18 Pa.C.S. § 2702(a)(1) – a felony of the first degree.
[3] 18 Pa.C.S. § 6105(a)(1) – a felony of the second degree.
[4] 18 Pa.C.S. § 2705 – a misdemeanor of the second degree.
[5] 18 Pa.C.S. § 4952 – graded as felonies of the first degree.



Filed    OCT 25 2018

Clerk

98

Murder. On November 1, 2016, all charges were bound over to this court for trial. On November 30, 2016, the Commonwealth filed a *Notice of Joinder* in all three cases,[6] thereby joining them for one trial pursuant to Pa.R.Crim.P. 582(B)(1).

On November 16, 2017, the Defendant filed an *Omnibus Pretrial Motion* seeking, *inter alia*: 1) suppression of letters which formed the basis of the charges of Intimidation of Witness/Victim in docket CP-28-CR-0000947-2016; and 2) severance of the charges filed at CP-28-CR-0000947-2016 from CP-28-CR-0001890-2016 for separate trials. This court held an evidentiary hearing on the Defendant's *Omnibus Pre-Trial Motion* on February 23, 2018. Post-hearing briefs were submitted by the parties

On March 20, 2018, this court issued an order denying suppression of the letters, and denying in part and granting in part the Defendant's request for severance. *See Order*, March 20, 2018. The court issued a written *Opinion* in support of its ruling.

Thereafter these matters proceeded to trial by jury from June 19, 2018 through June 22, 2018. At the conclusion of trial, the jury returned verdicts of guilt on the following offenses:

CP-28-CR-0000950-2016[7]
Count 1 – Attempted Murder
Count 2 – Aggravated Assault
Count 4 – Recklessly Endangering Another Person

---

[6] The Commonwealth's *Notice* included docket CP-28-CR-0000949-2016. However, the Defendant was subsequently indicted by the United States and the Court granted the Commonwealth a *nolle pros* of the charges at that docket.
[7] Count 3 – Person Not to Possess Firearm was severed for a separate trial and remains pending before this court.

2

CP-28-CR-0001890-2016
Count 1 - Solicitation – First Degree Murder
Count 2 - Conspiracy – First Degree Murder

CP-28-CR-0000947-2016[8]
Count 1 – Intimidation of a Witness
Count 3 – Intimidation of a Witness
Count 4 – Intimidation of a Witness

*See Verdict Slip*, June 22, 2018.

On August 31, 2018, the Court imposed an aggregate sentence of not less than 492 months (41 years) to not more than 1,200 months (100 years). The Defendant did not file a post-sentence motion.

On September 27, 2018, the Defendant filed the instant *Notice of Appeal*. By *Order of Court* dated October 1, 2018, this court directed the Defendant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1921(b). On October 22, 2018, the Defendant timely complied.

## ERRORS RAISED

The Defendant raises three errors in this appeal. As stated by him, they are:

> 1. Whether the Trial Court committed reversable [sic] error when it denied Defendant's request to suppress certain letters authored by him and seized by the Franklin County Jail.

---

[8] Count 2 – Intimidation of Witness was severed for a separate trial and remains pending before this court.

2. Whether the Trial court committed reversable [sic] error when it refused to sever docket 947 of 2016 from 1890 of 2016.

3. Whether the convictions of the Defendant are supported by sufficient evidence to prove his guilt beyond a reasonable doubt?

*Statement of Errors Complained of on Appeal*, October 22, 2018.

This court adequately explained the reasons for the denial of suppression (Issue 1) and partial denial of severance (Issue 2) in the *Opinion* filed of record in this matter on March 20, 2018. We have attached a copy of that *Opinion* for ease of review. This court relies thereon.

As to Issue 3, this court cannot reasonably opine as to the sufficiency of the evidence in support of the convictions. The Defendant has not identified which offenses he asserts are supported by insufficient evidence, or which element of those offenses are at issue. It is not this court's job to comb the record of the trial and offer our opinion as to all charges and each element of the charges when that issue was never raised with this court during trial, post-trial, or in post-sentence proceedings. The Defendant was convicted of eight (8) separate offenses, each of which contains multiple statutory elements.

More importantly, the Honorable Superior Court has repeatedly held that a bald assertion of insufficient evidence, without specifically identifying the offense(s) and element(s) at issue, results in waiver of the challenge on appeal. In

4

*Commonwealth v. Williams*, 959 A.2d 1252 (Pa.Super. 2008), the Superior Court stated:

> If Appellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal. The instant 1925(b) statement simply does not specify the allegedly unproven elements. Therefore, the sufficiency issue is waived.
>
> Before leaving this issue, we note that the Commonwealth failed to object to the aforementioned defect in the 1925(b) statement. We also note that the trial court's opinion addressed the topic of sufficiency. The Commonwealth's failure and the presence of a trial court opinion of no moment to our analysis because we apply Pa.R.A.P. 1925(b) in a predictable, uniform fashion, not in a selective manner dependent on an appellee's argument or a trial court's choice to address an unpreserved claim. Thus, we find 1925(b) waiver where appropriate despite the lack of objection by an appellee and despite the presence of a trial court opinion.

*Commonwealth v. Williams*, 959 A.2d 1252, 1257 (Pa.Super. 2008), quoting *Commonwealth v. Flores*, 921 A.2d 517, 522-23 (Pa.Super. 2007); *see also Commonwealth v. Stiles*, 143 A.3d 968, 982 (Pa.Super. 2016) (finding 1925(b) statement inadequate to preserve sufficiency claim where it did not "clearly state any element upon which he alleged the evidence was insufficient.").

5

Considering the Defendant was convicted of eight separate offenses, each containing multiple elements, this court cannot discern from the Defendant's claim of error which offense or offenses, or which element or elements, he claims is supported by insufficient evidence. Therefore, we are unable to offer an opinion. However, if the Honorable Superior Court determines an opinion should be rendered on all offenses and all elements, it is respectfully requested that a remand be issued to this court with sufficient time for this court to complete such a task.

**IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT OF PENNSYLVANIA-FRANKLIN COUNTY BRANCH**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | CRIMINAL ACTION |
| vs. | CP-28-CR-0000947-2016 <br> CP-28-CR-0000950-2016 <br> CP-28-CR-0001890-2016 |
| ANTHONY MICHAEL COBB, | JUDGE JEREMIAH D. ZOOK |
| Defendant | |

## OPINION

The above captioned matters are before the Court on the Defendant's *Omnibus Pre-trial Motion* (*Omnibus Motion*), filed November 16, 2017. Hearing was held on February 23, 2018. Timely post-hearing briefs have been submitted by the parties. This matter[1] is ready for decision.

### BACKGROUND

Several of the claims raised by the Defendant necessitate an examination of how charges at these three separate docket numbers relate to each other, if at all. To the extent factual findings are necessary from the evidence presented at hearing, the Court will make those in a separate section addressing each claim. However, a general summary of the Commonwealth's allegations at the outset is appropriate.

CP-28-CR-0000950-2016[2]

On April 20, 2016, the Defendant is alleged to have committed the offenses of: 1) Attempted Murder of the Third Degree; 2) Aggravated Assault; 3) Possession of Firearm Prohibited; and 4) Recklessly Endangering Another

---

[1] The Court previously disposed of the included Motion to Compel and Motion in Limine by *Order of Court*, February 23, 2018, and will not be addressed herein.

[2] These allegations are gleaned from the affidavit of probable cause filed in support of the charges in the *Police Criminal Complaint*. The Court has listed each docket in the alleged chronological order.

Filed MAR 2 0 2018

44.



Clerk

Person. The Commonwealth alleges that the Defendant was involved in a "fight involving 20-30 teens" in the Borough of Waynesboro, Franklin County.

During this altercation, the Defendant is alleged to have brandished a firearm and fired a shot at Jermaine Jenkins, as Jenkins was fleeing the scene. Witnesses reported to the police that Jenkins initially tried to stab or slash the Defendant with a knife; witnesses also reported that the Defendant then pulled out a gun and fired it at the fleeing Jenkins.

CP-28-CR-0001890-2016

On April 20, 2016, the Defendant is alleged to have committed the offenses of: 1) Solicitation to Commit Murder of the First Degree; and 2) Conspiracy to Commit Murder of the First Degree. The Commonwealth alleges that these offenses were committed in retaliation for the attempted stabbing by Jenkins of the Defendant earlier that same day. However, in what appears to be an alleged case of mistaken identity, the alleged co-conspirators purportedly tried to kill Corey Quartez Ballard, not Jermaine Jenkins. These acts are alleged to have occurred in the Borough of Waynesboro, Franklin County.

The Commonwealth alleges that the Defendant solicited and conspired with Ryan Troskoski, Brandon Maze, and/or Joey King to kill Jermaine Jenkins. The co-conspirators then attempted to shoot Ballard, mistaking him for Jenkins.

CP-28-CR-0000947-2016

Between the dates of May 10, 2016, and June 2, 2016, the Defendant is alleged to have committed four counts of Intimidation of Witness. These charges stem from four letters purportedly written by the Defendant to several individuals.

**MOTION TO SUPPRESS LETTERS IN DOCKET 947-2016[3]**

The Defendant seeks suppression of the four letters, purportedly written by him, that form the basis for the charges of Intimidation of a Witness. The

---

[3] *See Omnibus Motion*, ¶¶ 12 – 25.

2

basis for suppression is the averred violation of the 4th Amendment to the U.S. Constitution, and Article I § 8 of the Pennsylvania Constitution.

Findings of Fact

The Commonwealth called one witness in opposition to the Motion to Suppress, namely Deputy Warden James Sullen from the Franklin County Jail. His testimony revealed the following:

When inmates are committed to the Franklin County Jail, they are given a *Mail Authorization* form when they arrive. This form allows the inmate to decide whether they want to receive mail while they are incarcerated. The initial statement of the form reads as follows:

> The Warden or his designee may open *all* mail addressed to this institution upon your election to receive mail. There are two classes of mail: General Mail and Legal Mail. General mail consists of mail from friends, family, or general business associates. Legal Mail is defined in the Institutional Mail Policy Directive.

Commonwealth's Exhibit 1 (emphasis original).

If the inmate elects to receive mail, they sign the form acknowledging as such; this acknowledgment states as follows:

> I have read the above selection regarding mail and I wish to have my General Mail opened and delivered to me. I understand that this means the Warden or his designee may open and read my general mail. I also understand that my legal mail will be opened, searched in my presence for contraband, and I will sign the corresponding log upon receipt.

The Commonwealth entered the Defendant's signed *Mail Authorization* form into evidence. *See* Commonwealth's Exhibit 1. The Defendant elected to have mail opened, read and delivered by jail officials pursuant to his written authorization.

Standard Operating Procedure (SOP) 400.04 governs the handling of inmate mail at the Franklin County Jail. *See* Commonwealth's Exhibit 3. This

3

SOP covers both outgoing and incoming mail to the Jail. Outgoing mail is covered by ¶¶ 2.1 and 2.2. They state:

> 2.1 Outgoing legal mail will not be opened for the purpose of checking for contraband unless the interest inmate is present.
>
> 2.2 Outgoing mail may be opened for the purpose of checking for contraband.

Commonwealth's Exhhibit 3.

¶ 3 of the SOP states:

> The Warden, or designee, may open, read, censer, and/or reject mail based on legitimate correctional interests of order and security, including, but not limited to the following reasons:
>
> -   Mail with content that describes or encourages activities which may lead to the use of physical violence
>
> -   Mail containing information involving escape plots, plans to commit illegal activities or to violate FCJ rules and regulations
>
> -   Mail written in code
>
> -   Nudity or obscene language

¶ 4 of the SOP states:

> The sending and receipt of mail shall be restricted or prohibited for valid penological reasons such as introduction of contraband, threats to security or the public, or when requested by intended recipients. A restricted or prohibited mail log shall be maintained by the Captain.

The inmates at the Jail are provided an Inmate Handbook, which contains a section dealing with the facility's mail policy. Relevant to this decision is the portion which reads:

> Place your outgoing mail in the designated box located on your housing unit unsealed.

4

Commonwealth's Exhibit 4.

On May 12, 2016, Deputy Warden Sullen received a fax letter from Officer Thomas Storey of the Waynesboro Police Department. *See* Commonwealth's Exhibit 2. Ofc. Storey requested that Jail personnel scrutinize "non-privileged incoming and outgoing mail" for the Defendant, for a period of thirty days from May 9, 2016.

In response to Ofc. Storey's request, Deputy Warden Sullen started to monitor the Defendant's non-privileged mail. Deputy Warden Sullen kept a log of the mail that was read by jail staff. *See* Commonwealth's Exhibit 11. The four letters in question were intercepted by jail staff and turned over to law enforcement. At some point, the Defendant began to submit his letters unsealed with a note on the exterior asking jail staff to make copies before sealing the envelope.

According to the Defendant, who testified, he would place his outgoing letters in a mailbox on his housing unit; he would seal the letters before placing them in the box. He acknowledged that he had read the Inmate Handbook. Further, he learned that his mail was being scrutinized when he was charged with the instant Intimidation offenses.

<u>CONCLUSIONS OF LAW</u>

The Defendant argues that the reading of his outgoing mail violated of his rights under Article I, § 8 of the Pennsylvania Constitution, and the 4th Amendment to the U.S. Constitution. *See Brief of Defendant, Anthony Cobb, in Support of His Pre-Trial Omnibus Motion to Suppress* (*Brief of Defendant*). The Commonwealth responds that the Superior Court has already addressed this issue in *Commonwealth v. Moore*, 928 A.2d 1092 (Pa.Super. 2007), holding that the Pennsylvania and United States Constitutions are not violated by jail staff reading non-privileged mail of an inmate. *See Brief in Support of the Commonwealth's Request to Deny the Defendant's* Omnibus Motion to

5

Suppress (*Brief of Commonwealth*), p. 2. The Defendant argues that *Moore* is distinguishable on its facts. *See Brief of Defendant.*[4]

In *Moore*, a homicide detective from the Philadelphia Police Department contacted the security office of the State Correctional Institute at Graterford (SCI). *Moore*, 928 A.2d at 1094. The detective requested that SCI officials copy all incoming and outgoing mail of the defendant because the defendant's brother was wanted in relation to a murder. *Id.* The detective wanted to examine the defendant's mail in an effort to locate the defendant's brother. *Moore*, 928 A.2d at 1094-1095. SCI officials directed the detective to submit his request in writing, and to set forth the facts regarding the need for the mail interception. *Id.*, at 1095. The detective complied, and after internal review, SCI officials approved the detective's request. *Id.* SCI mailroom and security officials then began monitoring and copying all incoming and outgoing non-privileged mail of the defendant. *Id.*

The defendant's brother was ultimately located based, in part, on information homicide detectives gleaned from the defendant's prison mail. *Moore*, 928 A.2d at 1095. The defendant "and his acquaintances employed codes to conceal their messages"; they "also used blank lines to conceal names" in the subject correspondence. *Id.*

The defendant ultimately filed a motion seeking suppression of the letters.[5] The defendant argued to the trial court that:

> Generally [the defendant] conceded prisoners have no constitutional protection from searches in furtherance of legitimate prison security concerns. However, [the defendant] argued prisoners enjoy constitutional protections from searches initiated to pursue criminal investigations unrelated to security concerns. When prison officials seized and copied his mail at the request of detectives investigating a murder, they violated his constitutional rights. [The defendant] concluded the letters and their evidentiary fruits

---

[4] The Defendant has not numbered the pages of his brief, so the Court cannot cite to such.

[5] It is not at all clear from the Superior Court's opinion what charges the defendant was facing and how the letters were relevant to those charges; however, it appears at least one of the charges may have been related to intimidation of a witness. *Moore*, 928 A.2d at 1095.

6

should be suppressed because they were obtained without a warrant, in violation of his constitutional rights.

*Moore*, 928 A.2d at 1096. The trial court agreed and suppressed the letters. *Id.* The Commonwealth appealed. *Id.*

The Superior Court began its analysis with the United States Constitution. *Moore*, 928 A.2d at 1097. The Supreme Court of the United States developed a "two-fold" requirement to assert a violation of the 4th Amendment: 1) the individual "must demonstrate that he sought to preserve something as private": and 2) the individual's "expectation of privacy must be justifiable under the circumstances." *Moore*, 928 A.2d at 1098, *citing Smith v. Maryland*, 442 U.S. 735, 740 (1979). Further, "'[the Supreme Court] consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.'" *Id.*, *quoting Smith v. Maryland*, 442 U.S. at 743 – 44. The Superior Court further reviewed a number of federal decisions, both from the High Court and the Circuit Courts of Appeal, upholding the search and seizure of inmate mail due to a non-existent constitutional expectation of privacy. *Moore*, 928 A.2d at 1098 – 1099.

In ultimately concluding that the defendant's federal constitutional right had not been violated, the Superior Court stated:

> Instantly, prison officials informed Appellee about the prison's mail inspection procedure when he first arrived at prison. The inmate handbook and the Department of Corrections policy directives detail the prison's policy of mail inspection. Lt. Knauer testified at the May 15, 2006 suppression hearing that all mail sent to prisoners funnels through the prison mail room. Pursuant to this procedure, the mail room correction officers opened Appellee's non-privileged incoming mail to ascertain whether it contained contraband. Appellee also submitted his outgoing non-privileged correspondence to the mail room in unsealed envelopes, per prison policy. Appellee availed himself of a process that exposed his correspondence to the plain view of prison officials;

7

therefore, society would not recognize any alleged subjective expectation of privacy as reasonable.

Furthermore, Appellee and [his co-defendant] corresponded in coded language to keep their dialogue concealed from police. The use of codes demonstrates their desire to convey information in a furtive manner given the likelihood of inspection. The use of codes also suggests their true expectation that the mail would be read. Therefore, Appellee cannot claim the Fourth Amendment conferred upon him any legitimate expectation of privacy under these circumstances.

*Moore*, 928 A.2d at 1099.

Turning to the Pennsylvania Constitution, the Superior Court noted that, while our Constitution may be construed in a manner to provide greater protection than the Federal Constitution, the same two-part test is utilized: 1) a person must establish a subjective expectation of privacy; and 2) have demonstrated that the expectation is one that society is prepared to recognize as reasonable. *Moore*, 928 A.2d at 1101, *quoting from Commonwealth v. Duncan*, 817 A.2d 455, 463 (Pa. 2003) (cleaned up). Further:

An expectation of privacy will be found to exist when the individual exhibits an actual or subjective expectation of privacy and that the expectation is one that society is prepared to recognize as reasonable. In determining whether a person's expectation of privacy is legitimate or reasonable, the totality of the circumstances must be considered and the determination will ultimately rest upon a balancing of the societal interests involved. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.

*Moore*, 928 A.2d at 1101, *quoting Commonwealth v. Viall*, 890 A.2d 419, 422 (Pa.Super. 2005). The Superior Court ultimately rejected the defendant's state constitutional claim, finding an individual inmate's privacy concerns must give way to the important institutional concern of internal correctional security. *Id.*,

at 1102, *quoting Payne v. Commonwealth Dept. of Corrections*, 871 A.2d 795, 809 (Pa. 2005), additional citations omitted. Further, the Superior Court found the Pennsylvania Constitution affords an inmate no greater protection than the Federal Constitution. *Id.*, at 1102. The Court ultimately held that the defendant "has no constitutional right to privacy in his non-privileged person mail." *Id.*

The Superior Court had occasion, a mere three months later, to apply the decision in *Moore*. In *Commonwealth v. Thompson*, 934 A.2d 1281 (Pa.Super. 2007), the defendant challenged the reading of his mail that was sent back to the jail by the postal service marked "return-to-sender." *Thompson*, 934 A.2d at 1286. The Court recognized the recent decision in *Moore*, and found *Moore's* holding to be "that a prisoner has no constitutional right to privacy in his non-privileged mail." *Id.* With no additional analysis, the Superior Court affirmed the trial court's admission of the letter at trial. *Id.*

A reference to the *Moore* decision was made in *Commonwealth v. Faurelus*, 147 A.3d 905 (Pa. 2016). In *Faurelus*, the Superior Court reviewed a trial court's denial of post-conviction relief. *Faurelus*, 147 A.3d at 908. During the initial prosecution, the defendant sought suppression of a letter "delivered to the prosecutor's office" by an unidentified individual. *Id.*, at 909. Inside the envelope was another envelope, containing a letter purportedly written by the defendant to his girlfriend. *Id.* The trial court denied suppression, and the Superior Court affirmed. *Id.*, at 909 – 910.

On appeal from denial of post-conviction relief, the Superior indicated in a footnote that the suppression of the letter had been affirmed on direct appeal:

> This Court pointed out on direct appeal that an inmate generally has no constitutional right to privacy in his non-privileged mail. *Commonwealth v. Faurelus*, No. 459 MDA 2010, unpublished memorandum at 7 (Pa.Super. filed September 28, 2011) (*citing Commonwealth v. Moore*, 928 A.2d 1092, 1102 (Pa.Super. 2007).

9

*Faurelus*, 147 A.3d at 909, n. 1. It is not unreasonable, in light of these subsequent citations to *Moore*, to conclude that *Moore* stands for the general proposition for which it has been so cited: an inmate generally has no constitutional right to privacy in his non-privileged mail. Suppression could be denied herein on that finding alone.

However, even assuming *arguendo*, that *Moore* requires a trial court to consider the unique factual and policy/procedures of a given correctional facility, the Defendant's claim still fails. This Court rejects out of hand the Defendant's argument that Deputy Warden Sullen's failure to immediately notify the Defendant that his out-going mail was being monitored somehow violated the Defendant's privacy right in that mail. That argument presupposes a privacy right existed in the out-going mail. The evidence established no such reasonable expectation of privacy in outgoing mail, either before or after notification of mail monitoring. In fact, the evidence established the contrary.

Commonwealth's Exhibit 4 conclusively established that inmates are instructed to put their outgoing mail "unsealed" in the designated box located on their housing unit. This Jail directive is included in the Inmate Handbook, and the Defendant was actually aware of, or such knowledge can be imputed to him by, his receipt of the Handbook. Therefore, he knew or should have known that the mail must be surrendered to jail officials in an unsealed fashion, *i.e.*, in a fashion that allows jail officials to examine the contents. The fact that he may have sealed it, in direct contravention of a known jail directive, does not thereby create a reasonable expectation of privacy in the mail. To hold otherwise would allow all sorts of mischief in the correctional setting, *i.e.* permitting willful ignorance by inmates to set the boundaries of constitutional protection. It is the reasonable expectation of privacy, an expectation that society is prepared to accept, that sets the bounds. In the correctional setting, a requirement that outgoing mail be left with jail officials in an unsealed fashion is reasonable to society, and no resulting expectation that the mail will

10

be sent out unexamined by jail staff inures to the Defendant. Therefore, suppression of the letters will be denied.

## MOTION TO SEVER DOCKET NOS. 947-2016 AND 1890-2016[6]

The Defendant seeks to sever the charges filed at CP-28-CR-0000947-2016 (Intimidation offenses) for a separate trial from the charges filed at CP-28-CR-0001890-2016 (Solicitation & Conspiracy to Commit Murder of the First Degree). Severance of charges is governed by Pa.R.Crim.P. 583:

> The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together.

Pa.R.Crim.P. 583. Our appellate courts have set forth well-settled principles for trial courts to consider when faced with a motion to sever charges:

> Under Rule 583, the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime.
>
> The prejudice of which Rule 583 speaks is, rather, that which would occur if the evidence tended to convict the appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself.
>
> In addition, where the defendant moves to sever offenses not based on the same act or transaction ... the court must therefore determine: (1) whether the evidence of each of the offenses would be admissible in a separate trial for the other; (2) whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these

---

[6] *Omnibus Motion,* ¶¶ 26 – 33.

11

inquiries are in the affirmative, (3) whether the defendant will be unduly prejudiced by the consolidation of offenses. Evidence of other crimes is not admissible solely to show the defendant's bad character or propensity to commit crimes. Nevertheless, evidence of other crimes is admissible to demonstrate:

(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial, in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.

Evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts.

*Commonwealth v. Richard*, 2016 PA Super 247, 150 A.3d 504, 509–10 (2016), internal citations and quotations omitted (cleaned up).

The parties submitted Joint Exhibit 1[7] for the Court's consideration to determine whether severance should be granted. Because the Defendant seeks to sever the charges related to Intimidation of Witnesses, the Court will also consider Commonwealth Exhibits 7 – 10.[8] Although the Defendant has not asked for severance of the charges filed at CP-28-CR-0000950-2016, a review of those is warranted. As needed, the Court has reviewed the Affidavits of Probable Cause for all charges pending for one trial. The Court has ordered the summary of the allegations in each case in chronological order.

---

[7] This Exhibit consists of the *Transcript of Proceedings of Preliminary Hearing* held on February 14, 2017, in *Commonwealth v. Brandon Maze*, CP-28-CR-342-2017; Mr. Maze is a co-defendant and that case has been joined with the Defendant's for one trial.

[8] These exhibits are copies of the letters, alleged to have been written by the Defendant, which form the basis of the Intimidation charges; the exhibits were admitted during the hearing on suppression, but the Court does not believe either party would object to their consideration on the question of severance. However, as we note in more detail *infra*, the letters submitted in evidence do not appear to match in several instances with the information in the *Affidavit of Probable Cause* in support of the Intimidation charges.

12

CP-28-CR-0000950-2016

Because this *Affidavit of Probable Cause* contains voluminous information, the Court incorporates it herein by reference from the record.

CP-28-CR-0001890-2016[9]

On April 20, 2016, the Defendant advised Joseph King, Ryan Troskoski, and Brandon Maze, that a tall, skinny, black male with a red hat and a short, black male with a black hat, had tried to rob him. King, Troskoski, and Maze were associates/friends of the Defendant and would "hang out" together.

After receiving this information, King began to search for these individuals in the Borough of Waynesboro, Franklin County. King observed two individuals walking on Potomac Street near the Rutter's store; based on King's observations, he believed these individuals were the ones described by the Defendant.

King then called the Defendant with this information and was picked up approximately five minutes later in the Rotary parking lot by Troskoski, Maze, and the Defendant. Troskoski was driving, the Defendant was in the front seat, Maze and King were in the rear seats. The Defendant provided King with a firearm; the others in the car already had guns. King left his own car in the area of the Rotary. They then proceeded to the area near Rutters where King had observed the individuals.

Upon arrival, all four exited the vehicle. Maze and King were together when they saw an individual walking in an alley. Maze called after the individual and started chasing him before King could verify that it was one of the individuals they were looking for. King ran after Maze. 10 or 15 seconds after they began to chase this individual, King heard Maze fire his gun. The individual they were chasing escaped. King then returned to his own car and left the area. Maze ran away in a different direction; he did not return with King.

---

[9] These facts are drawn from Joint Exhibit 1 and are for purposes of deciding severance only.

13

Approximately a week later, the Defendant, King, Maze, and Troskoski met up again. They discussed the previous incident briefly, concluding that the individual they chased was not who they were looking for.

## CP-28-CR-0000947-2016[10]

On May 9, 2016, the Defendant was taken into custody in relation to the other pending charges set forth above. He was arrested during a search warrant of his residence, which resulted in additional charges[11] being filed against the Defendant for violations of The Controlled Substance, Drug, Device and Cosmetic Act.[12] The Defendant was placed in the Franklin County Jail in lieu of posting bail.

While incarcerated, the Defendant sent a letter to Terri Stottlemyer, the pregnant girlfriend of Troskoski. *See* Commonwealth's Exhibit 5. In the letter, the Defendant implores Stottlemyer to: 1) find out what Troskoski has told the police; 2) if Troskoski has given a statement against the Defendant, that Troskoski should tell his lawyer that it was a lie; 3) to tell Troskoski to "stop being a chicken shit" and that Troskoski "must not cooperate with the cops under no circumstances." *Id.* Further, the Defendant states, "Tell [Troskoski] he's already in trouble Terri and that we really need to talk because if [people] find out he is telling Terri they will make him check in from where he is at."

The Defendant also sent a letter to "Mr. Rob," who apparently the Commonwealth believes to be the Defendant's co-defendant, Ryan Troskoski. This information is gleaned from the *Affidavit of Probable Cause*, as the Court has been unable to identify any letter to a "Mr. Rob" or Ryan Troskoski admitted as an exhibit in these proceedings.[13] There is a record from the jail

---

[10] The summary of these allegations are gleaned from the Affidavit of Probable Cause.

[11] Those charges were docketed at CP-28-CR-0000949-2016. The Defendant was ultimately indicted by federal authorities for the drug offenses, and the Commonwealth was granted a *nolle pros* of these charges.

[12] 35 P.S. § 780-101, *et seq.*

[13] Commonwealth's Exhibit 5 is the aforementioned letter to Terri Stottlemyer. Commonwealth's Exhibit 6 is a letter to "Bubbles" with a page attached bearing an envelope addressed to "Brenda Jones," although there is no indication in the letter that "Bubbles" is the same person as "Brenda Jones." Commonwealth's Exhibit 7 is a letter to a recipient that is

14

that the Defendant sent a letter to "Mr. Robert" on May 24, 2016, but the actual letter was not submitted into evidence, or was not properly identified among the exhibits that were admitted.

According to the *Affidavit of Probable Cause*, in the letter to "Rob" the Defendant asks him to speak to Terri, presumably meaning Terri Stottlemyer. The Defendant directs "Rob":

> Plz make sure that you speak with Terri about the issue at hand that we cannot talk about on the phone about. She is my witness and you must make sure she be ready to say the following so keep this and make her remember to say: She was up and in the room with Jess and Emma when B. Anthonys nephew was getting ready to go to work around 0430 am, she witness him put a Ziploc bag in the small fridge in Jesses room and witness him pull out money and plastic bags and placed them under the far side of jess bed before he left for work, and most of time he hide stuff in there when had to work...

He also wrote:

> Plz make her, Terri, memorize this to make a statement saying just that bro. Tell Terri also if they ask her anything about me to just say Anthony's hardly ever there because he lives in Hagerstown because of his parole and that's all she know of meetings is Im a nice person 'Bob plz' make Terri remember this, it is extremely important that she this exactly how I tell her to and she will have to make a statement and testify.

Finally, the Defendant wrote, "Also don't let her forget that the storage that was in my name is Johnny Michaels, and it was in my name b-cuz Johnny did not have an ID. All of you'll must remember that."

The Defendant wrote a letter to "Ms. Shy." See Commonwealth's Exhibit 10. In the letter, the Defendant states:

---

unidentified. Commonwealth's Exhibit 8 is a letter addressed to "Jess." Commonwealth's Exhibit 9 is a letter that is not addressed to anyone, and may even be only one page of a multi-page letter. Commonwealth's Exhibit 10 is a letter addressed to "Ms. Shy."

15

I'm not sure whats going on with Terries man but I'm getting a bad vibe babe. I wish you would be so kind as to ask Terri what is Ryan saying and to find out the truth from him or what he is saying or if he is saying anything. I tried to communicate with him but they have him scared shitless I guess and for what I'm not sure and I know its 1st time and everything but this is truly ridiculous especially at this time. I got mad love for Terri but he is really acting like a real pussy Babe. Anyway if you can please let Terri know I mentioned something to you because its kinda seems not right plus child services has stepped in and said something to me and Jess and this what I'm concerned about. And I don't think he understands the seriousness of this because anything he say against me gives them leverage to try and take my child. Babe and Terri needs to know that this is serious and its important that <u>he not do so</u>!!

Commonwealth's Exhibit 10 (emphasis original).

The Defendant also wrote a letter to Ms. Mary Richardson.[14]   See Commonwealth's Exhibit 6. In this letter, the Defendant states:

> 1st – N farmost – my nick name is "Florida" or "Anthony" "Nothing Else" remember that; U-do-not know me as no Ant – Not my name
>
> #2 – Florida or Anthony lives-n-Hagerstown and I only come to visit my daughter and her mother occasionally

---

[14] Commonwealth's Exhibit 6 contains the language quoted by Officer Chappell in his Affidavit of Probable Cause, and appears to be the letter stated by Ofc. Chappell to have been sent to Mary Richardson. However, Commonwealth's Exhibit 6 also contains a copy of the envelope, which is addressed to "Ms. Brenda Jones." The letter itself begins with the salutation "My Baby! Bubbles!" The Court is unaware of whether this is an error on the part of the Commonwealth, *i.e.*, the envelope does not go with this letter, or whether "Brenda Jones" is another name for "Mary Richardson" or whether "Bubbles" is another name for "Brenda Jones" or "Mary Richardson." We note that Commonwealth's Exhibit 11, the mail log, contains information indicating that the Defendant sent a letter to "Ms. Brenda Jones" on May 31, 2016, and letters to "Ms. Mary Richardson" on May 31, 2016, and June 8, 2016 (2 letters); further, these two names are associated with different mailing addresses. The mail log also reveals a letter sent to "Mary Robinson" on June 24, 2016, with the same address as the letters sent to "Mary Richardson" on May 31, 2016, and June 8, 2016. It is also possible that Ofc. Chappell erred in his *Affidavit* regarding the intended recipient of the letter. However, there was no explanation for these discrepancies offered by the Commonwealth at any point.

16

#3 – All you witness me "Florida" do was stop a short black guy from stabbing a teenage girl and walked away

#4 – You tell them you screamed for me to watch out and was to late and the short guy stabbed Florida when he was not looking

#5 – Then after he stabbed Florida the guy ran. Florida took chase after him then some guy with dreads shot a gun and everyone ran in all directions

#6 – Also say that I do not live out here n-Waynesboro that I live in Hagerstown, MD because of my parole

These four letters form the basis for the Intimidation charges.

The Defendant avers that these letters relate to the charges that were ultimately *nolle prossed* by the Commonwealth, *i.e.*, the drug charges for which the Defendant is now federally indicted. *See Omnibus Motion*, ¶ 31.[15] As to the letter to Terri Sottlemyer, the Court finds that the letter is probative of the incidents in question, as it relates to whether the co-defendant (Troskoski) is cooperating against the Defendant. The Defendant's conduct in the other joined cases provides the motive for the letter to be sent, and the letter itself is evidence of the Defendant's involvement with the co-defendant, i.e., "tell him not to cooperate with the cops," etc. The Defendant is free to argue what weight this letter is to be accorded, and what other alternative theories explain the language used by the Defendant, but the jury will be able to separate the charge related to the letter from the underlying alleged criminal acts quite easily. As the Defendant himself points out, the letters were sent almost 2 months after the underlying criminal acts.

---

[15] The Defendant states "Specifically, the information contained in these letters speaks only to the charges docketed at 947-2016; not to 1890-2016. As such, introduction of these letters in a trial for the solicitation case will likely require evidence of un-convicted bad acts that would not otherwise be admissible under Pa.R.Evid. 404(b)." *Omnibus Motion*, ¶ 31. The Defendant's reference to docket 947-2016 appears to be in error, as 947-2016 is the Intimidation charges themselves; the Defendant's argument makes sense if he intended to reference 949-2016, the charges dismissed by the Commonwealth in favor of the federal indictment. We presume it to be as such.

17

The second letter, purportedly sent to Troskoski, *i.e.*, Mr. Rob, is much more problematic than the letter to Stottlemyer. It seems quite clear to the Court, and no other theory of admissibility was put forth by the Commonwealth, that the information the Defendant communicated (or attempted to communicate) to Troskoski was related to the drug case, which is no longer pending before this Court. While such a letter may still constitute the crime of Intimidation of a Witness, it relates to crimes for which the Defendant will not be standing trial, *i.e.*, docket 949-2016. As previously indicated, the Court could not locate a copy of the actual letter to "Mr. Rob" in the exhibits; however, based upon the *Affidavit of Probable Cause*, it is neither relevant nor probative of the underlying criminal charges. Therefore, severance for a separate trial is warranted for CP-28-CR-0000947-2016 – Count 2.

As to the letters sent to "Mary Richardson" and "Ms. Shy,"[16] they are probative of the underlying conduct in CP-28-CR-0000950-2016 and CP-28-CR-0001890-2016, although particularly so with CP-28-CR-0000950-2016. As these two dockets are joined, and the Defendant has not asked that they be severed, the letters would be admissible in that joint trial. Further, the underlying criminal allegations in CP-28-CR-0000950-2016 and CP-28-CR-0001890-2016 would be admissible in a separate trial for Intimidation because they establish motive for the communications in the letters. Therefore, severance is not warranted for CP-28-CR-0000947 – Counts 3 & 4.

## CONCLUSION

The Defendant did not have a reasonable expectation of privacy in his out-going mail at the Franklin County Jail. Therefore, suppression will be denied. Count 2 at CP-28-CR-0000947-2016 will be severed for a separate trial as the evidence appears to relate to charges which are not before the Court

---

[16] We note that Count 4 of the *Information* indicates the intimidation is related to Jessica Jones. However, the *Affidavit of Probable Cause* does not list or otherwise detail a letter to "Jessica Jones." We presume this is a clerical error, as the *Affidavit of Probable Cause* lists the intended recipients of the letters as: 1) Terri Stottlemyer; 2) "Rob"; 3) Ms. Shy; and 4) Ms. Mary Richardson. Assuming this is the case, the Commonwealth should make every effort to file an appropriate motion to amend the *Information* appropriately prior to trial.

18

for a joined trial; the balance of the Defendant's request for severance will be denied.

An appropriate order follows.